UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMIAH CHESNEY,

       Plaintiff,           CASE NO.: 2:14-cv-11097
                            HON. GERALD E. ROSEN
v.                          MAG. JUDGE MICHAEL J. HLUCHANIUK

CITY OF JACKSON, et al,

       Defendants.
_____

| | |
|---|---|
| STEVEN W. DULAN  (P54914) | AUDREY J. FORBUSH  (P41744) |
| THE LAW OFFICES OF | PLUNKETT COONEY |
| STEVEN W. DULAN, P.C. | Attorney for Defendants, City of |
| Attorney for Plaintiff |     Jackson, Gross, Black, Mills, |
| 1750 E. Grand River Avenue, Ste 101 |     Postma, Heins and Kingston |
| East Lansing, MI  48823 | Plaza One Financial Center |
| (517) 333-7132 | 111 E. Court Street, Ste 1B |
| swdulan@stevenwdulan.com | Flint, MI  48502 |
| | (810) 342-7014 |
| | aforbush@plunkettcooney.com |

_____

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, CITY OF JACKSON, POLICE SGT. PAUL GROSS, POLICE OFC. TIMOTHY BLACK, POLICE OFC. WILLIAM MILLS, POLICE OFC. PETER POSTMA, POLICE OFC. CARY KINGSTON and MATTHEW HEINS, by and through their attorneys, PLUNKETT COONEY, and for their Motion for Summary Judgment, hereby state as follows:

1

1.     Plaintiff has filed this action alleging violations of the First, Second, Fourth, and Fourteenth Amendments of the United States Constitution, as well as claims of conspiracy, false imprisonment, assault and battery and replevin in connection with his arrest for resisting and obstructing officers after he refused officers' instructions to leave a Secretary of State office during an investigation of suspicious activity.  Plaintiff's Complaint includes both official capacity and individual capacity claims.

2.     As the City of Jackson is named as a Defendant, the official capacity claims are duplicative and should be dismissed.  *See, e.g., Ebelt v. County of Ogemaw*, 231 F. Supp. 2d 563 (E.D. Mich. 2002).

3.     As more specific constitutional amendments apply to Plaintiff's claims, the 14th Amendment claims should likewise be dismissed.  *See, e.g., Albright v. Oliver*, 510 U.S. 266 (1994).

4.     Qualified immunity bars Plaintiff's First Amendment claim because Plaintiff was not engaged in speech, there is no evidence of retaliation due to speech, and because the law on this issue is not clearly established.  *See, e.g., Spence v. Washington*, 418 U.S. 405 (1974); *Everson v. Leis*, 556 F.3d 484 (6th Cir. 2009).

5.     Similarly, Second Amendment rights have not been found to apply outside the home and, further, the law concerning Plaintiff's Second Amendment

claim was not clearly established at the time of these events, so qualified immunity also bars his claim that his Second Amendment rights were violated. *See, e.g., Northrup v. City of Toledo*, __ F. Supp. 3d. __, 2014 WL 4925052, (N.D. Ohio 2014).

6.     Plaintiff's Fourth Amendment claim fails because Defendants had reasonable suspicion to investigate and detain Plaintiff, and probable cause existed for his arrest.  Qualified immunity therefore bars this claim.

7.     As probable cause existed for Plaintiff's arrest and because no excessive force was used, Plaintiff's claims of assault and battery and false imprisonment are not sustainable.  Furthermore, these claims are precluded by governmental immunity.

8.     Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. *See, e.g., Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999).

9.     Plaintiff cannot establish a failure to train resulting in a violation of his constitutional rights, and the City of Jackson is entitled to summary judgment with regard to Plaintiff's constitutional claims. *See, e.g., Monell v. Dep't. of Social Services,* 436 U.S. 658, 691 (1978).  As the City of Jackson was engaged in a governmental function with regard to these events, Plaintiff's state tort claims are likewise unsustainable against the City.  Mich. Comp. L. 691.1407(1).

10.    Plaintiff's claim for replevin is barred by governmental immunity.

11.    Defendants are therefore entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

12.    Defendants' counsel contacted counsel for Plaintiff on November 25, 2014 and explained the nature of this Motion and its bases and sought, but was unable to obtain, concurrence.

WHEREFORE Defendants pray this Honorable Court GRANT their Motion for Summary Judgment, together with such additional relief in their favor as this Court deems just and proper.

Respectfully submitted,

**PLUNKETT COONEY**

By */s/Audrey J. Forbush*
      AUDREY J. FORBUSH  (P41744)
      RHONDA R. STOWERS (P64083)
      Attorneys for Defendants
Dated: December 1, 2014          111 E. Court Street – Suite 1B
      Flint, MI  48502
      (810) 342-7014
      aforbush@plunkettcooney.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMIAH CHESNEY,

      Plaintiff,           CASE NO.: 2:14-cv-11097
                            HON. GERALD E. ROSEN
v.                        MAG. JUDGE MICHAEL J. HLUCHANIUK

CITY OF JACKSON, et al,

      Defendants.

_____

| | |
|---|---|
| STEVEN W. DULAN  (P54914) | AUDREY J. FORBUSH  (P41744) |
| THE LAW OFFICES OF | PLUNKETT COONEY |
| STEVEN W. DULAN, P.C. | Attorney for Defendants, City of |
| Attorney for Plaintiff |      Jackson, Gross, Black, Mills, |
| 1750 E. Grand River Avenue, Ste 101 |      Postma, Heins and Kingston |
| East Lansing, MI  48823 | Plaza One Financial Center |
| (517) 333-7132 | 111 E. Court Street, Ste 1B |
| swdulan@stevenwdulan.com | Flint, MI  48502 |
| | (810) 342-7014 |
| | aforbush@plunkettcooney.com |

_____

## **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# QUESTIONS PRESENTED

**(Defendants answer "yes" to all of the below)**

1.     Should the official capacity claims be dismissed as duplicative?

2.     Should Plaintiff's 14th Amendment claim be dismissed because more specific constitutional amendments apply?

3.     Does Plaintiff's First Amendment claim fail because Plaintiff was not engaged in speech, there is no evidence of retaliation due to speech, and because the law on this issue is not clearly established, thus entitling Defendants to qualified immunity?

4.     Does qualified immunity preclude Plaintiff's Second Amendment claim because rights under that amendment have not been found to apply outside the home and, further, were not clearly established at the time of these events?

5.     Does Plaintiff's Fourth Amendment claim fail because Defendants had reasonable suspicion to investigate and detain Plaintiff, and probable cause existed for his arrest?

6.     Does the existence of probable cause also negate Plaintiff's false imprisonment claim?

7.   Has Plaintiff failed to establish an unlawful assault and battery?

8.   Are Plaintiff's claims of assault and battery and false imprisonment barred by governmental immunity?

9.   Is Plaintiff's conspiracy claim barred by the intracorporate conspiracy doctrine?

10.  Has Plaintiff failed to establish a failure to train resulting in a violation of his constitutional rights, barring Plaintiff's federal claims?

11.  Are Plaintiff's state law claims against the City of Jackson barred by governmental immunity?

## <u>CONTROLLING/APPROPRIATE AUTHORITIES</u>

### <u>Federal Rules</u>

Fed. R. Civ. P. 56

### <u>Federal Cases</u>

*Albright v. Oliver*, 510 U.S. 266 (1994)

*Baker v. Schwab*, __ F. Supp. 2d __, 2014 WL 4111375 (E.D. Mich. 2014).

*Burgess v. Wallingford*, No. 11-cv-1129, 2013 WL 4494481 (D. Conn. May
   15, 2013) (Exhibit 5)

*Doe v. Claiborne Co., Tenn.*, 103 F.3d 495 (6th Cir. 1996)

*Ebelt v. County of Ogemaw*, 231 F. Supp. 2d 563 (E.D. Mich. 2002)

*Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999)

*Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989)

*Northrup v. City of Toledo Police Div.*, __ F. Supp. 3d __, 2014 WL 4925052
   (N.D. Ohio 2014); *Nordyke v. King*, 319 F.3d 1185 (9th Cir. 2003)

*Reichle v. Howards*, __ U.S. __, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)

*Terry v. Ohio*, 392 U.S. 1 (1968)

*United States v. Merritt,* 695 F.2d 1263 (10th Cir.1982), *cert. denied,* 461 U.S.
   916 (1983)

### <u>State Cases</u>

iv

*Brewer v. Perrin*, 132 Mich. App. 520 (1984).

*Odom v. Wayne County*, 482 Mich. 459 (2008)

*Rex Beach Pictures Co., Inc. v. Harry I. Garrison Productions*, 209 Mich. 692

    (1920)

*Tope v. Howe*, 179 Mich. App. 91 (1989)

*VanVorous v. Burmeister*, 262 Mich. App. 467 (2004).

## **State Laws**

Mich. Comp. L. 691.1407

Mich. Comp. L. 750.81d

## INTRODUCTION

This action arises out of Plaintiff's detention and arrest at a Secretary of State office, where Plaintiff was refusing to cooperate with officers who were investigating suspicious activity. Plaintiff has alleged violations of his constitutional rights and also claims of assault and battery, false imprisonment, conspiracy, failure to train and replevin. As set forth more fully below, these claims cannot survive summary judgment, particularly in light of qualified and governmental immunity. Defendants are therefore entitled to summary judgment in their favor.

## STATEMENT OF FACTS

For purposes of this Motion, only, Defendants do not dispute the following facts. Based on the undisputed facts, Defendants are entitled to summary judgment as a matter of law.

On May 15, 2013, the one-month anniversary of the Boston Marathon bombings[1], Jackson City police were dispatched to Jackson's Secretary of State office because of calls of an individual with a loaded gun in a dark-colored backpack acting suspiciously. (Exhibit 1, Pl.'s Dep., p. 47-49, 70). The City of Jackson's Secretary of State office is located in a mall known as Jackson

---

[1] The Boston Marathon bombings occurred when two individuals left backpacks containing homemade bombs at the finish line of the race. Pursuant to Fed. R. Evid. 201, this court may take judicial notice of the date of that event and the fact that the bombers used backpacks to deliver their devices.

1

Crossing.[2]  (Ex. 1, Pl.'s Dep., p. 49).  There were approximately 50 to 60 people in the State office at the time of these events, including elderly individuals and young children.  (Ex. 1, p. 50).

The individual with the backpack was Plaintiff, who was dressed in dark clothing.[3]  (Ex. 1, p. 48).  He originally came into the State office, stayed about 20 minutes, then exited and returned with a backpack.  (Ex. 1, p. 48-49).  He left his backpack at a desk and began pacing.  (Ex. 1, p. 52).  He was reported to have repeatedly looked out of the window, which he does not dispute.  (Ex. 1, p. 51-52).

Officers entered Secretary of State through both entrances (the mall entrance and entrance from the parking lot) and approached Plaintiff.  (Ex. 1, p. 56-57).  Officer Mills asked Plaintiff to step outside to speak with him about what was going on, but Plaintiff refused.  (Ex. 1, p. 60).  Officers asked Plaintiff repeatedly to step outside, raising their voices, Plaintiff continued to refuse in an increasingly louder voice.  (Ex. 1, p. 61-63).  Two officers then took hold of Plaintiff's arms,

---

[2] Jackson Crossing is a weapon-free zone and is posted as such.  (Exhibit 2, Photographs).  However, the signs are only posted inside the mall.  (Ex. 2).  Plaintiff entered the State office through the outside entrance, rather than from inside the mall.  (Ex. 1, p. 50).

[3] Plaintiff was carrying a loaded gun.  He testified it was in a holster on his hip and was never in his backpack as reported.  (Ex. 1, p. 53).  He indistinctly heard whispering about his gun before the police arrived.  (Ex. 1, p. 51).

2

shoulders and waist and escorted him from the building.[4]  (Ex. 1, p. 66-67).

Plaintiff tensed up and resisted, at which point Officer Mills directed Officer Black

to disarm Plaintiff.  (Ex. 1, p. 67-68).  Plaintiff concedes that he was non-compliant

in leaving the building.  (Ex. 1, p. 75).

     In the parking lot outside the building, Sgt. Gross explained in detail that

they were there because it had been reported that Plaintiff had a loaded gun in his

backpack.  (Ex. 1, p. 70-71).  He requested Plaintiff's identification and concealed

pistol license; Plaintiff refused to provide them.  (Ex. 1, p. 69-71).  Plaintiff was

repeatedly asked for his documents, and repeatedly refused to provide them or to

answer questions.  (Ex. 1, p. 69-71).  He eventually provided his concealed pistol

license, but he never voluntarily produced his driver's license.  (Ex. 1, p. 72-73).

This exchange was captured on video.  (Exhibit 4, Video).

     Plaintiff was arrested for resisting and obstructing, due to his failure to

comply with the officers during the course of their investigation.  He was informed

he was under arrest and directed to put his hands behind his back.  (Ex. 1, p. 75-

76).  Plaintiff resisted, necessitating the use of force[5] to secure Plaintiff.  (Ex. 1, p.

---

[4] Reports confirm that Officer Mills and Sgt. Gross performed this escort.  (Exhibit 3, Reports).

[5] Officer Mills held Plaintiff by the hair in an attempt to gain compliance while the other officers put Plaintiff's hands behind his back.  (Ex. 1, p. 77).  He let go once Plaintiff was secure.  (Ex. 4).

76; Ex. 4).  Plaintiff was jailed for two days until his arraignment, and the charge

against him was ultimately dismissed at the prosecutor's discretion.

## MOTION STANDARD

Summary judgment shall be granted "if the movant shows that there is no

genuine issue as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  The Court must view the evidence in a light

most favorable to the non-movant and draw all reasonable inferences in the non-

movant's favor.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

To create a genuine issue of material fact the non-movant must do more than

present some evidence capable of being admitted at trial on a disputed issue.  As

the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242 (1986), " [t]here is no issue for trial unless there is sufficient evidence

favoring the non-moving party for a jury to return a verdict for that party.  If the

[non-movant's] evidence is merely colorable, or is not significantly probative,

summary judgment may be granted."  *Id.* at 249-50 (citations omitted); *See Celotex

Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## ANALYSIS

Plaintiff's claims against Defendants are unsustainable.  The official

capacity claims are duplicative and should be dismissed.  Plaintiff's Fourteenth

4

Amendment claim fails because other, more specific constitutional provisions are applicable.  Plaintiff's remaining constitutional claims are barred by qualified immunity, and Plaintiff cannot establish a failure to train.  Plaintiff's state law claims fail as a matter of law on the facts and as a result of governmental immunity.  Summary judgment must accordingly enter in Defendants' favor.

### Plaintiff's official capacity claims are subject to dismissal as duplicative.

Plaintiff has asserted claims against all of the Defendant officers in their official capacities.  An official sued in his official capacity is not a "person" within the meaning of 42 U.S.C. § 1983.  *Hawks v. Jones*, 105 F. Supp. 2d 718 (E.D. Mich. 2000).  Instead, a claim against an individual in his official capacity is equivalent to a lawsuit directed against the public entity which that individual represents.  *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993).  "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) (*quoting Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

Here, Plaintiff has asserted official capacity claims and claims against the City for each of his federal causes of action.  (Pl.'s Compl., filed with this Court, ¶ 41, 46, 51).  As official capacity claims are the equivalent of a suit against the government entity, and as the City of Jackson is a defendant in this matter,

Plaintiff's official capacity claims are duplicative, and should be dismissed.  *Ebelt v. County of Ogemaw*, 231 F. Supp. 2d 563, 568 (E.D. Mich. 2002); *Vance v. County of Santa Clara,* 928 F.Supp. 993, 996 (N.D.Cal.1996) ("The Court follows other District Courts in holding that if individuals are being sued in their official capacity as municipal officials *and* the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed."). Dismissal of Plaintiff's official capacity claims is therefore warranted.

## Plaintiff's Fourteenth Amendment claims fail.

Plaintiff has not pled a stand-alone Fourteenth Amendment claim; instead, it is paired with other, more express constitutional provisions.  (Pl.'s Compl., Counts I, II & III).  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting in part *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Boone v. Spurgess*, 385 F.3d 923, 933 (6th Cir. 2004) ("a specific constitutional guarantee— that all seizures be reasonable—trumps a more general guarantee—that all government action conform with substantive due process").  Plaintiffs' Fourteenth Amendment claim is duplicative of, and wholly incorporated by, his claims under

6

the First, Second and Fourth Amendments.  As such, Plaintiff's Fourteenth

Amendment claims are unsustainable and must be dismissed.

### Defendants are entitled to qualified immunity as to Plaintiff's federal claims.

The individual Defendants are entitled to qualified immunity with respect to

Plaintiff's claims under the United States Constitution.  "Qualified immunity

grants government officials engaged in discretionary activities immunity from

individual liability for civil damages unless their conduct violates clearly

established statutory or constitutional rights of which a reasonable person would

have known."  *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).  It

protects "all but the plainly incompetent or those who knowingly violate the law."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).  In other words, "officials are immune

unless the law clearly proscribed the actions they took."  *Anderson v. Creighton*,

483 U.S. 635, 639 (1987) (quoting *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).

Qualified immunity is a question of law for the Court, and Plaintiff bears the

burden of demonstrating that the defendant is not entitled to qualified immunity.

*Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007).

The qualified immunity analysis involves two questions: "(1) whether,

considering the allegations in a light most favorable to the party injured, a

constitutional right has been violated, and (2) whether that right was clearly

established."  *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).  These questions

need not be answered in any particular order.  *Pearson v. Callahan*, 555 U.S. 223, 236-237 (2009).  "To be clearly established, a right must be sufficiently clear that <u>every</u> reasonable official would have understood that what he is doing violates that right.  In other words, existing precedent must have placed the statutory or constitutional question <u>beyond</u> <u>debate</u>."  *Reichle v. Howards*, __ U.S. __, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (internal quotations and citations omitted, emphasis added).  There was no a violation of a clearly established constitutional right that would preclude qualified immunity in this case.

### 1.   First Amendment

Plaintiff contends that he was openly carrying a pistol to increase awareness that it is legal to do so and to rally public support.  (Pl.'s Compl., ¶ 49).  In order to establish that his conduct constituted protected free speech, Plaintiff must establish that his conduct conveyed a message in circumstances in which there was a high probability that his audience would understand it.  *Spence v. Washington*, 418 U.S. 405, 410-411 (1974).  Plaintiff cannot do so.

Plaintiff was not in the Secretary of State's Office to make a speech.  On the contrary, Plaintiff testified, "I was there to get a new title."  (Ex. 1, p. 53).  He was not carrying any signs, wearing a shirt with a political message, engaging with any other customers or handing out leaflets.  He was simply wearing his gun in an open manner.  Courts in this and other circuits have rejected the notion that "gun

8

possession alone conveys any message at all." *Northrup v. City of Toledo Police Div.*, __ F. Supp. 3d __, 2014 WL 4925052 at *4 (N.D. Ohio 2014); *Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003) ("Typically a person possessing a gun has no intent to convey a particular message, nor is any particular message likely to be understood by those who view it."); *Baker v. Schwab*, __ F. Supp. 2d __, 2014 WL 4111375 (E.D. Mich. 2014).

Moreover, the inside of a Secretary of State office is not a locale where one would expect to encounter political speech. "[T]he First Amendment does not guarantee access to government property simply because it is owned or controlled by the government." *Jobe v. City of Catlettsburg*, 409 F.3d 261, 266-267 (6th Cir. 2005). "In cases where the principal function of the property would be disrupted by expressive activity, the Court is particularly reluctant to hold that the government intended to designate a public forum." *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 804 (1985). Secretary of State offices are simply not public forums which "by long tradition or by government fiat have been devoted to assembly and debate." *Id.* Other circuits have made similar holdings with regard to municipal office buildings. *See e.g., United Black Community Fund, Inc. v. City of St. Louis*, 613 F. Supp. 739, 744 (E.D. Mo. 1985) (noting that the City workplace bore "little similarity to streets and parks—the paradigm instances of public forums."); *Make the Road by Walking, Inc. v. Turner*,

9

378 F.3d 133 (2d Cir. 2004) (welfare office waiting rooms were nonpublic fora); *Sefick v. Gardner*, 164 F.3d 370 (7th Cir. 1998) (lobby of courthouse was nonpublic forum).  Plaintiff's "message" in this nonpublic forum was not made in circumstances where it would be understood, as demonstrated by the reaction of his alleged intended audience, which whispered among themselves before calling the police.  Plaintiff has failed to establish that his conduct constituted speech.

Plaintiff's claim is also fatally flawed because there is no evidence Defendants retaliated against him for his alleged speech.  Defendants were conducting an investigation into a concealed weapon in a backpack, not Plaintiff's open carry weapon.  He refused to step outside when asked to do so by the officers, resisted their efforts to escort him outside, and would not provide identification when asked.  It was the reports of suspicious activity that caused his detention, and his own conduct that resulted in his arrest, not his manner of carrying his weapon.

Moreover, it is not clearly established that the mere possession of an openly-carried pistol constitutes speech; indeed, caselaw suggests the opposite.  *Baker, supra*; *Northrup, supra*; *Burgess v. Wallingford*, No. 11-cv-1129, 2013 WL 4494481 (D. Conn. May 15, 2013) (unpublished, attached as Exhibit 5).  Given the uncertainty of the law in this area, Defendants are entitled to qualified immunity.

### 2.      Second Amendment

Plaintiff's Second Amendment claim fails for the same reason as his First Amendment claim, namely, the extent to which the Second Amendment applies outside of the home is not clearly established.  *Northrup, supra* at *5 (noting that neither the parties nor the Court "has identified any case in which the Second Amendment was held to cover" the right to open carry on a sidewalk and citing *Drake v. Fliko*, 724 F.3d 426, 430-31 (declining to "definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home")); *Burgess, supra* at * 8 ("it was, and remains, unclear how the Second Amendment applies to an unconcealed carry."); *Baker, supra* at *9 ("Even after *McDonald* [*v. Chicago*, 561 U.S. 742 (2010)], the application of the Second Amendment…outside of the home, is unsettled.")  Defendants are therefore entitled to qualified immunity.

### 3.      Fourth Amendment

Plaintiff's claim that he was taken into physical custody without reasonable suspicion or probable cause is without merit.  Officers do not require probable cause in order to briefly detain an individual based upon citizen concerns.  Instead, police need only a "reasonable suspicion" that an offense is being committed.  *Terry v. Ohio*, 392 U.S. 1 (1968).  This is something significantly less than probable cause.  *Illinois v. Wardlow*, 528 U.S. 119, 124-125 (2000).

Plaintiff's brief detention was reasonable. "[T]here is no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry, supra* at 21. In making this determination, this Court "must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Id.* "And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Id.* at 21-22 (*quoting in part Caroll v. United States*, 267 U.S. 132 (1925)).

The investigatory stop of Plaintiff during the course of the Defendants' investigation was reasonable. At the time they first came into contact with Plaintiff, Defendants were investigating a call that an individual with a backpack was acting suspiciously, on the one-month anniversary of the Boston Marathon bombings. It was reported that the suspicious individual had removed a loaded handgun from the backpack. Plaintiff fit the description of the suspect exactly and was carrying a backpack. Defendants were therefore justified in approaching Plaintiff to investigate.

Defendants' decisions to remove an armed individual from a crowded lobby containing elderly and children and to disarm him were also appropriate, particularly as Plaintiff was non-cooperative and becoming increasingly agitated. "[I]t is well established that officers may ask (or force) a suspect to move as part of a lawful *Terry* stop." *United States v. Gori*, 230 F.3d 44, 56 (2d Cir. 2000); *People v. Corr*, 287 Mich. App. 499, 507 (2010) ("It is reasonable…to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety."); *United States v. Merritt*, 695 F.2d 1263, 1274 (10th Cir.1982), *cert. denied,* 461 U.S. 916 (1983) ("Whenever the police confront an individual reasonably believed to present a serious and imminent danger to the safety of the policy and the public, they are justified in taking reasonable steps to reduce the risk that anyone will get hurt."). As Justice Harlan said in his concurrence in *Terry*, "[c]oncealed weapons create an immediate and severe danger to the public…. There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet."

Defendants were therefore justified in forcing Plaintiff outside and detaining him until the investigation into the dispatch call was completed.  During the course of the investigation, Plaintiff repeatedly refused to follow the instructions of law enforcement:  he refused to go outside, refused to provide his concealed pistol

13

license, and refused to provide his driver's license, thereby hindering the

investigation.  *Sutton v. Metro. Gov't of Nashville & Davidson County*, 700 F.3d

865, 874 (6th Cir. 2012) (stating that during a *Terry* stop investigation, the "officer

can ask a moderate number of questions to ascertain the detainee's identity and to

confirm or dispel that officer's initial suspicions[.]").

Given his refusal to follow lawful orders both within the Secretary of State

and outside, Defendants had probable cause to arrest Plaintiff for resisting an

officer.  "A peace officer, without a warrant, may arrest a person…[when a]

felony, misdemeanor, or ordinance violation is committed in the peace officer's

presence."  Mich. Comp. L. 764.15(1)(a).  Ordinance 18-31 of the City of Jackson

provides:  "No person shall willfully and knowingly hinder, oppose, obstruct or

resist any law enforcement officer or official or employee of the city in performing

his duties as such."  (available at www.municode.com, last accessed 11/30/14).

Similarly, knowingly failing to comply with a lawful order of an officer constitutes

a felony under Michigan law.  Mich. Comp. L. 750.81d.  Plaintiff's repeated

refusals to comply with Defendants' lawful orders constituted probable cause to

believe that Plaintiff had violated the Jackson Ordinance and state law.  Plaintiff

has failed to establish a violation of a clearly established right, and Defendants are

entitled to qualified immunity.

14

## <u>Plaintiff's claims of assault and battery and false imprisonment also fail.</u>

As Defendants had probable cause to arrest Plaintiff for resisting and obstructing officers, his false imprisonment claim fails.  "In order to prevail on a claim of false arrest or false imprisonment, the plaintiff must show that the arrest was not legal, i.e., that it was made without probable cause."  *Tope v. Howe*, 179 Mich. App. 91, 105 (1989) (citations omitted).  "The burden of proving lack of probable cause is on the plaintiff," and the existence of probable cause is a question of law for the Court.  *Ringo v. Richardson*, 88 Mich. App. 684, 690 (1979); *Merriam v. Continental Motors Corp.*, 339 Mich. 46 (1954).

It is irrelevant for this determination whether or not the plaintiff was actually guilty.  *See Brewer v. Perrin*, 132 Mich. App. 520, 527 (1984).  The issue is whether "the facts and circumstances within the officer's knowledge at the time of the arrest are sufficient to a prudent person, or one of reasonable caution, to believe that the suspect has committed or is committing a crime."  *Tope, supra* at 102.  "If the arrest was legal, there has not been a false arrest or a false imprisonment."  *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003).  As earlier stated, Defendants had probable cause to believe that Plaintiff was resisting and obstructing officers, as he refused to follow lawful commands in their presence. Plaintiff's claim for false imprisonment therefore fails.

Similarly, Plaintiff cannot establish assault and battery.  Plaintiff contends

15

that Defendants assaulted him by putting their hands on him and escorting him out of the Secretary of State office when he refused to move under his own power.  It is well-established in Michigan law that "government actors may find it necessary—and are permitted—to act in ways that would, under different circumstances, subject them to liability for an intentional tort."  *VanVorous v. Burmeister*, 262 Mich. App. 467, 483 (2004).  Officer Mills and Sgt. Gross were justified in using a minimum of force to gain compliance over Plaintiff.[6]

Assault and battery claims against law enforcement personnel are governed by a reasonableness standard akin to excessive force claims brought under the Fourth Amendment.  *Id.* ("To find for plaintiff on these claims, our courts would have to determine that the officers' actions were not justified because they were not objectively reasonable under the circumstances.").  Under this standard:

> the officer's use of force [must] be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure.  This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstance of the particular case. The officer's subjective intentions are irrelevant[.]  *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002).

---

[6] As these were the only two Defendants who used force to escort Plaintiff, they are the only individuals to whom this claim is applicable.  A claim of assault and battery will not lie against a non-participant who neither requests the assault nor encourages it through affirmative conduct.  *Smith v. Simon*, 69 Mich. 481 (1888); 1 Mich. Civ. Jur. Assault & Battery § 5.

16

The reasonableness of the force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The court must avoid substituting personal notions of proper police procedure for the instantaneous decision of the officer at the scene.  *Boyd v. Baeppler*, 215 F.3d 594 (6th Cir. 2000).  As explained by the Supreme Court:

> Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Graham*, *supra* at 396-97.

In this case, Plaintiff does not allege that the force used by Defendants was unreasonable—or even unnecessary—just that it was "intentional" and "not consensual."  (Pl.'s Compl.).  Where a plaintiff has failed to assert that an officer used unreasonable force, a claim for assault and battery is unsustainable and must be dismissed on dispositive motion.  *Brewer, supra* at 529.

Defendants are also entitled to governmental immunity with respect to these intentional torts.  In *Odom v. Wayne County*, 482 Mich. 459 (2008), the Michigan Supreme Court articulated the standard to be applied in order to determine whether lower-level employees, such as Defendant, are entitled to governmental immunity for alleged intentional torts, as follows:

17

If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity…by showing the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

> (c) the acts were discretionary, as opposed to ministerial.  *Id.* at 480.

Each of these factors is present in the instant case.  It is obvious that in conducting an investigation and arresting Plaintiff, Defendants were acting in the course and scope of their employment.  It is well settled that criminal investigations and arrest functions are clearly within the course and scope of the duties of Sheriff's deputies.  *See People v. Van Tubbergen*, 249 Mich. App. 354, 361 (2002).  The first prong of the *Odom* test is met.

Secondly, Defendants acted in good faith.  "The good-faith element of the Michigan qualified immunity test is subjective in nature.  It protects a government employee's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent."  *Moher v. United States*, 875 F. Supp. 2d 739, 762 (W.D. Mich. 2012) (quoting in part *Oliver v. Smith*, 290 Mich. App. 678, 688 (2010)).  Therefore, a governmental employee is entitled to immunity unless "the governmental employee acts maliciously or with a wanton or reckless disregard of the rights of another."  *Odom, supra* at 474.

18

As earlier stated, Defendants were justified in taking Plaintiff into the parking lot of the mall when performing an investigation. Plaintiff was reported as armed, acting suspiciously and refusing to cooperate in a room filled with 50-60 people. In light of the safety of the other patrons and the officers, his escort outside was justified. Similarly, there is no evidence in this case that Plaintiff's arrest was done either recklessly or maliciously. Probable cause supported Plaintiff's arrest.[7] His arrest was made cautiously and with deliberation, after a discussion of his conduct. Plaintiff cannot establish the necessary malice to avoid governmental immunity.

Finally, Defendants' actions were discretionary in nature, rather than ministerial. As explained in *Odom, supra*:

> Ministerial acts constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice….Discretion, on the other hand, implies the right to be wrong. Discretionary acts require personal deliberation, decision and judgment. *Id.* at 476.

Michigan law is clear that the decision whether to arrest an individual is discretionary in nature. *Oliver, supra* at 689 ("an officer's decision concerning what type of action to take, e.g., to make an arrest, issue a warning, or wait for assistance, is a discretionary act entitled to immunity."). Defendants are therefore

---

[7] Although Plaintiff ascribes ill motive to Officer Mills based on a prior contact with him, Officer Mills can be heard on the video telling Sgt. Gross that it's "his call" and that Officer Mills "doesn't care one way or the other." (Ex. 4).

19

entitled to governmental immunity with regard to Plaintiff's intentional tort claims of false imprisonment and assault and battery.

Similarly, the City of Jackson is immune from these claims under state law. The Governmental Tort Liability Act (GTLA) provides a broad grant of immunity to governmental entities from tort liability, as set forth in Mich. Comp. L. 691.1407(1), as follows:

> Except as otherwise provided in this act, **all governmental agencies shall be immune from tort liability in all cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function**.  Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.  (emphasis added).

A governmental function is any activity that is expressly or impliedly mandated or authorized by Constitution, statute, or other law.  *Harrison v. Director of Dept. of Corrections*, 194 Mich. App. 446 (1992); *Eichhorn v. Lamphere School Dist.*, 166 Mich. App. 527 (1988).  This definition "is to be broadly applied and requires only that there be *some* constitutional, statutory or other legal basis for the activity in which the governmental agency was engaged."  *Harris v. University of Mich. Bd. of Regents*, 219 Mich. App. 679 (1996) (emphasis in original).

In this instance, Defendants were investigating a suspected crime, which is a governmental function.  *Tate v. City of Grand Rapids*, 356 Mich. App. 656, 661 (2003) ("defendant's police officers were investigating a reported felonious assault,

20

a crime; thus, they were engaged in police activity-a governmental function-within the contemplation of the GTLA").  As the City of Jackson employees were performing a governmental function at the time of these events, Plaintiff's claims are therefore unsustainable against the City of Jackson.

### Plaintiff cannot establish a failure to train.

Section 1983 "does not permit a municipal entity to incur liability under a theory of respondeat superior.  Rather, a municipality may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question."  *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).  In other words, "governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988).

Accordingly, "a § 1983 plaintiff suing a governmental defendant must allege and prove the existence of a policy or custom of violating individuals' rights." *Foster v. Walsh,* 864 F.2d 416, 419 (6th Cir. 1988).

Here, Plaintiff claims that the City of Jackson failed to properly train its officers concerning the right to open carry.  To establish that a municipality failed to properly train and supervise an employee, plaintiff must show that the alleged failure evidences a "deliberate indifference" to the rights of its inhabitants.  *City of Canton*, 489 U.S. at 388-389; *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994).

21

"Deliberate indifference" means evidence showing an obvious indifference, not a "collection of sloppy, or even reckless oversights." *Doe v. Claiborne Co., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996). Whether the training was the best and most comprehensive available or whether the injury could have been prevented by more or better training has no bearing on a plaintiff's failure to train claim. *Lewis v. City of Irvine, Kentucky*, 899 F.2d 41, 45 (6th Cir. 1990).

Plaintiff's claim cannot be sustained, as the City of Jackson has provided training to its officers on open carry law. (Exhibit 6, Training Records). Further, the officers at the scene acknowledged their understanding of Plaintiff's right to open carry. (Ex. 4). Plaintiff cannot establish that the City of Jackson had a policy of failing to train its officers on this issue. Summary judgment is therefore warranted.

### The intracorporate conspiracy doctrine bars Plaintiff's claim.

Plaintiff cannot demonstrate the necessary elements to prove his claim of conspiracy. In order to establish conspiracy, Plaintiff would have to show that two or more persons acted in concert to accomplish either an unlawful purpose or a lawful purpose by unlawful means. *Admiral Ins. Co. v. Columbia Casualty Ins. Co.*, 194 Mich. App. 300, 313, 486 N.W.2d 351 (1992). Plaintiff would also need to prove a separate, actionable tort underlying the conspiracy. *Advocacy*

22

*Organization for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384, 670 N.W.2d 569 (2003).  Plaintiff cannot make either showing.

Plaintiff cannot establish the "two or more people" element of his claim of conspiracy because the Defendants are all members of the City of Jackson Police Department and forwarding the goals of the City of Jackson.  Plaintiff's claim is therefore barred by the intracorporate conspiracy doctrine.

"According to the intracorporate conspiracy doctrine, members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999).  Plaintiff concedes that Defendants were acting within the scope of their employment during their interactions with him.  (Pl.'s Compl., ¶ 15). As Defendants were acting within the scope of their employment in investigating the call from dispatch, detaining and then arresting Plaintiff, they constitute a single entity for purposes of a claim of conspiracy.  *Hull v. Coyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) ("Since all of the defendants are members of the same collective entity, there are not two separate "people" to form a conspiracy.").  Plaintiff therefore cannot meet the necessary element of two or more people to establish his claim of conspiracy.

Further, as set forth above, Plaintiff cannot establish an underlying tort.  The officers' actions were based on probable cause and were reasonable based on the

information from dispatch and Plaintiff's conduct.  Plaintiff cannot establish a

separate tort to sustain his conspiracy claim.  Summary judgment is therefore

warranted.

### Plaintiff's claim for replevin fails as a matter of law.

Finally, Plaintiff asserts a replevin claim against Defendants.  Michigan law

is clear that such actions sound in tort.  *John J. Gamalski Hardware, Inc. v. Baird*,

298 Mich. 662, 669 (1941) ("replevin is an action of tort"); *See also Rex Beach*

*Pictures Co., Inc. v. Harry I. Garrison Productions*, 209 Mich. 692, 703 (1920)

("It should be borne in mind that this is an action in tort for the recovery of the

possession of property" and "[t]he authorities are uniform in holding that replevin

is a personal action ex delicto [i.e., in tort], brought to recover goods unlawfully

taken or detained.").  As set forth above, the investigation and arrest of Plaintiff

constitutes a governmental function.  As such, governmental immunity bars this

claim as against the City of Jackson.  Mich. Comp. L. 691.1401.

The individual Defendants likewise are entitled to immunity as to this claim;

however, the Court need not address this question, as the individual Defendants do

not have possession of Plaintiff's pistol.  Replevin is an action for return of

possession of a chattel, *See Rex Beach Pictures Co., Inc., supra*, not a vehicle for

monetary damages or other relief.  *See Lozada v. Dale Baker Oldsmobile, Inc.*, 145

24

F. Supp. 2d 878, 891 (W.D. Mich. 2001).  As the Defendant officers do not have Plaintiff's pistol, his claim against them for replevin accordingly fails.

## CONCLUSION

Defendants are entitled to summary judgment.  Plaintiff's official capacity and Fourteenth Amendment claims are duplicative and should be dismissed on that basis.  Plaintiff cannot establish his constitutional claims, which are barred by qualified immunity.  His state law claims are likewise unsustainable, as probable cause existed for his arrest, the officers used reasonable force, and all Defendants are entitled to immunity as to Plaintiff's state law claims.  Further, the evidence does not support Plaintiff's claim that the City failed to train its officers. Defendants are therefore entitled to summary judgment.

Respectfully submitted,

**PLUNKETT COONEY**

By ***/s/Audrey J. Forbush***
AUDREY J. FORBUSH  (P41744)
RHONDA R. STOWERS (P64083)
Attorneys for Defendants
Dated: December 1, 2014        111 E. Court Street – Suite 1B
Flint, MI  48502
(810) 342-7014
aforbush@plunkettcooney.com

## CERTIFICATE OF ELECTRONIC FILING

Rhonda Stowers, certifies that a copy of the above pleadings and this Certificate of Electronic Filing was electronically filed with the United States

25

District Court, Eastern District of Michigan, Southern Division, in the above cause on December 1, 2014, and that due to the mandatory court requirement that all attorneys use the electronic filing system, a copy will be provided to counsel by the court's notification; as well as a Judge's copy via US First Class Mail.   I declare under the penalty of perjury that the above statement is true to the best of my knowledge, information and belief.


/s/Rhonda Stowers_____
Rhonda Stowers (P64083)


Open.00560.40854.14832694-1

26