UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jeremiah Chesney,                    Case No. 2:14-cv-11097

               Plaintiff,

v.                                   Hon. Gerald E. Rosen

City of Jackson, et al.

               Defendants.
_____/

| | |
|---|---|
| Steven W. Dulan (P54914) | Audrey J. Forbush (P41744) |
| The Law Offices of | Plunkett Cooney |
| Steven W. Dulan, PLC | Attorney for Defendants |
| Attorney for Plaintiff | Plaza One Financial Center |
| 1750 E Grand River Ave | 111 E. Court Street |
| Suite 101 | Suite 1B |
| East Lansing, MI 48823 | Flint, MI 48502 |
| (517) 333-7132 | (810) 342-7014 |
| swdulan@stevenwdulan.com | aforbush@plunkettconey.com |

_____/

# Response to Motion for Summary Judgment

# Table of Contents

Table of Contents................................................................i

Tables of Authorities.........................................................ii

Questions Presented.........................................................1

Introduction.....................................................................2

Statement of Facts...........................................................3

Motion Standard...............................................................5

Legal Argument.................................................................6

    Redundancy of Official Capacity Claims............................6

    Fourteenth Amendment Claims.......................................6

    Qualified Immunity Claims.............................................7

    Qualified Immunity and Fourth Amendment Claim..........7

    Qualified Immunity and Second Amendment Claim........11

    Qualified Immunity and First Amendment Claim...........14

    State Assault, Battery, and False Imprisonment Claims.16

    Failure to Train Claim....................................................17

    Replevin Claim.............................................................17

Request for Relief.............................................................19

i

# Tables of Authorities

## Case Authority

*Barron v. Baltimore*, 32 U.S. 243 (1833)................................6

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).......12

*D.C. v. Heller*, 554 U.S. 570 (2008)........................................11

*Drake v. Filko*, 724 F.3d 426 (3CA 2013)..............................13

*Ezell v. Chicago*, 651 F.3d 684 (7CA 2011)...........................12

*Gideon v. Wainwright*, 372 U.S. 335 (1963)...........................6

*Gitlow v New York*, 268 U.S. 652 (1925)..................................6

*Higgason v. Stephens*, 288 F.3d 868 (6CA 2002)....................7

*Kalchasky v. Cnty. of Westchester*, 701 F.3d 81 (2CA 2012). 13

*Mapp v. Ohio*, 367 U.S. 643 (1961)..........................................6

*McDonald v. Chicago*, 561 U.S. 742 (2010)...........................14

*Moore v. Madigan*, 702 F3d 933 (7CA 2012).........................12

*Nordyke v. King*, 319 F.3d 1185 (9CA 2003)..........................15

*Peruta v. Cnty of San Diego*, 742 F.3d 1144 (9CA 2014) 11, 12

*Smith v. Tarrant Cnty College Dist.*, 694 F. Supp.2d 610
(N.D. Tex. 2010)........................................................................15

*Spence v. Washington*, 418 U.S. 405 (1974)...........................15

Terry v. Ohio, 392 U.S. 1 (1968)..........................................7, 8

*Tinker v. Des Moines Indep. School Dist.*, 393 U.S. 503 (1969)
.............................................................................................14, 15

*Tyler v. Hillsdale Cnty Sherrif's Dept.*, ___ F.3d ___, Docket
No. 13-1876 (6CA 2014).........................................................13

*U.S. v. Diebold, Inc.*, 369 U.S. 654 (1962)...............................5

*U.S. v. O'Brien*, 391 U.S. 367 (1968)....................................14

*U.S. v. Strickland*, 144 F.3d 412 (6CA 1998).........................8

*Wollard v. Gallagher*, 712 F.3d 865 (4CA 2013)...................13

# **Statutory Authority**

Fed. R. Civ. P. 56(a)...................................................................5

MCL 750.234d.........................................................................8

MCL 750.227............................................................................8

MCL 750.479............................................................................9

MCL 750.479............................................................................9

Ordinance 18-31 of the City of Jackson.................................9

Mich. Const. 1963 Art. X Sec. 2...........................................17

MCL 750.239..........................................................................17

# Questions Presented

Plaintiff answers yes to the following.

1. Is the inclusion of the City redundant to the Official Capacity claims?

2. Were Plaintiff's Fourth Amendment rights violated when he was arrested without probable cause?

3. Were Plaintiff's Second Amendment rights violated when he was arrested in association with exercising his right to keep and bear arms?

4. Were Plaintiff's First Amendment rights violated when he was arrested in accociation with an act meant to be symbolic speech?

5. Can Defendant City of Jackson be liable under a theory of replevin?

1

# Introduction

This case arose from Plaintiff's seizure and arrest at a Secretary of State office, where Plaintiff was lawfully openly carrying a firearm. Plaintiff alleges violations of his First, Second, and Fourth Amendment rights, as well as state claims of assault and battery, false imprisonment, and replevin. Plaintiff refutes the claims to qualified and governmental immunity by Defendants as more fully established below.

## Statement of Facts

On May 15, 2013, Plaintiff went to a Secretary of State office to obtain a title for a motorcycle. Pl.'s Dep., 53:6. Plaintiff was openly carrying a pistol in a holster, as he does regularly. Pl.'s Dep., 53:21, 54:8, 90:20-23.

After Plaintiff had been at the office for about an hour, officers of the Jackson Police Department arrived. Pl.'s Dep., 50:24. Officer Mills asked Plaintiff whether he would please step outside to talk. Pl.'s Dep. 60:19. Plaintiff, worried about losing his place in line responded that he would prefer to speak where he was. Pl.'s Dep. 60:22-25. Officers responded to Plaintiff's request to speak where he was by grabbing him and dragging him outside. Pl.'s Dep. 61:3-5. Plaintiff did not resist attempts to be moved. Pl.'s Dep. 67:12-13. Plaintiff was then told to wait outside the car while officers discussed possible charges. Def.'s Exhibit 4. Outside the Secretary of State's office, Plaintiff was told he was under arrest for resisting a lawful order. Pl.'s Dep. 76:15-16. Plaintiff

3

explained to the officer that he had not interpreted the question of whether he would please go outside as an order. Pl.'s Dep. 76:24-77:1. Plaintiff was then handcuffed and forced into the patrol car. Pl.'s Dep. 77:2-16. As he was being handcuffed, an officer pulled his hair. Pl.'s Dep. 77:19.

Plaintiff was taken to the Jackson County Jail, where he was held for 3 days before being arraigned. Charges against him were eventually dropped by the Jackson County Prosecutor four months later when the video evidence was reviewed..

## Motion Standard

Summary judgment is only granted if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Facts must be construed in the light most favorable to the non-moving party. See *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

# Legal Argument
## Redundancy of Official Capacity Claims

Plaintiff concedes that based upon current case law, the inclusion of Defendant City of Jackson was redundant to the extent that it overlaps with the inclusion of Defendant Officers in their individual capacities.

## Fourteenth Amendment Claims

Plaintiff admits that no Fourteen Amendment claim has been pled. The inclusion of the Fourteenth Amendment in the complaint was simply because sections of the U.S. Constitution are not generally applicable to states. See *Barron v. Baltimore*, 32 U.S. 243, 248 (1833). However, rights granted to US citizens may be incorporated as binding upon the states by way of the Fourteenth Amendment. See *Gitlow v New York*, 268 U.S. 652, 666 (1925); *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Mapp v. Ohio*, 367 U.S. 643 (1961). Plaintiff only includes references to the Fourteenth Amendment to incorporate the relevant sections

6

of the Bill of Rights. As there is no stand-alone Fourteenth Amendment claim, there is no claim to dismiss under Defendants' arguments.

## Qualified Immunity Claims

Plaintiff bears the burden of showing that his rights are well-established. For a right to be well-established, it must be one of which "a reasonable person would have known." *Higgason v. Stephens*, 288 F.3d 868, 876 (6CA 2002).

## Qualified Immunity and Fourth Amendment Claim

It is a long-standing rule that the Fourth Amendment protects individuals from being seized by law enforcement without at least reasonable suspicion that a person is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 9, 19 (1968). Even with reasonable suspicion, the scope of allowed action is limited to that needed in order to confirm or dispel the officer's suspicions. *Id.* at 19 (citing *Warden v. Hayden*, 387 U.S. 294, 310 (1967)). A person only becomes seized once a reasonable person would feel that they are not free to

7

leave. *Terry*, 392 U.S. at 19, n 16. In order to make a lawful arrest, an officer requires probable cause, more than mere suspicion, that an offense has been committed. *U.S. v. Strickland*, 144 F.3d 412, 416 (6CA 1998).

In order to determine whether reasonable suspicion or probable cause existed, it is necessary to review Michigan's criminal laws. Under Michigan law, the open carry of a firearm does not require a license unless a person carries in very specific areas; Secretary of State offices are not included in the list of firearms free areas. MCL 750.234d. However, a person may not carry a weapon concealed in public unless specifically licensed to do so. MCL 750.227.

Defendants allege that they received a call about a gun concealed inside a backpack. When the officers arrived on scene, no Defendant mentions seeing a backpack on Plaintiff's person. Officers report *asking* Plaintiff if he would talk to them outside. (See Ex. 2, Police Report) Plaintiff responded that he could talk to them right where he was.

8

Defendant Officers then grabbed Plaintiff and dragged him outside. Plaintiff produced his Concealed Pistol License for officers, though not required to do so as he was not carrying any concealed weapon. Officers asked Plaintiff to stand in front of the squad car, an order he complied with, while discussing what to charge him with. Leaving Plaintiff alone while conversing demonstrates that Officers did not feel Plaintiff was an immediate threat.

MCL 750.479 governs charges of resisting or obstructing an officer. Obstruction is defined in this section as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.479(8)(a). When accessed, Ordinance 18-31 of the City of Jackson makes a reference to this same section of state law, leading to the conclusion that the two laws are coterminous in the behavior they proscribe. As the officers stated in their report, Plaintiff was asked "politely" whether he would come outside to talk. Plaintiff stated his preference to stay where

9

he was. At this point, Defendant Officers had only engaged Plaintiff in a consensual encounter, which Plaintiff stated that he would prefer to have where he was located. At this point, Defendant Officers' suspicions of a person carrying a concealed weapon should have been dispelled and the contact ended. Since Officers escalated the contact past the scope that was called for by their suspicions, the seizure of Plaintiff was unreasonable, and Defendant Officers' actions should not be granted Qualified Immunity.

Defendants quote concurrance in Terry regarding forcibly confronting a person suspected of a serious crime. However, Defendants never state a crime they suspected Plaintiff of. Defendants also speak of the need to confront an individual who is reasonably believed to present a serious and imminent danger to the safety of the police and the public. Again, the facts as presented do not indicate that Plaintiff was an imminent threat to anyone. By the time police arrived on the scene, Plaintiff had been waiting at the

10

Secretary of State's office for an extended period of time.

## Qualified Immunity and Second Amendment Claim

Defendants incorrectly treat Second Amendment rights as though they are completely unsettled law. *DC v. Heller* treats the right to defend oneself against public and private threats as its core component. *D.C. v. Heller*, 554 U.S. 570, 594 (2008); *Peruta v. Cnty of San Diego*, 742 F.3d 1144, 1149 (9CA 2014). While *Heller* treats the right to self defense within the home as being "most acute", *Heller* does make an assumption that the right to keep and bear arms extends beyond the home. *Heller*, 554 U.S. at 594, 628 (2008). As an example, when setting out the list of "longstanding prohibitions" that will be presumed constitutional, *Heller* makes a distinction between "sensitive areas" and other public places. *Id.* at 626. Were the right to keep and bear arms to be limited to the home, this distinction would not be necessary. *Peruta*, 742 F.3d at 1153. When reviewing precedent, there is a heavy presumption against terms being

11

redundant. See *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001). Therefore we must presume that when the court speaks about "sensitive areas" that must mean something different than *all* public areas.

Though it is true that the Sixth Circuit Court of Appeals has not yet spoken on the issue of the right to bear arms outside the home since the *Heller* decision, it would be incorrect to categorize the right to keep and bear arms as one that is "unsettled." The Seventh and Ninth Circuits have found broad protection for Second Amendment rights outside the home. See *Peruta*, 742 F.3d at 1153 (recognizing right to carry outside the home); *Ezell v. Chicago*, 651 F.3d 684, 702-03 (7CA 2011) (recognizing right to shoot at a range under *Heller*); *Moore v. Madigan*, 702 F3d 933 (7CA 2012) (recognizing right to carry outside the home).While the Second, Third, and Fourth Circuits have found in favor of *lessened* protections for Second Amendment rights outside the home, lessened protections assume that protection of

12

those rights does exist. See *Kalchasky v. Cnty. of Westchester*, 701 F.3d 81, 89, 96 (2CA 2012) (finding that the Second Amendment must have "some application" outside the home); *Drake v. Filko*, 724 F.3d 426, 431-35 (3CA 2013) (declining to "definitively declare" that *Heller* applies outside the home); *Wollard v. Gallagher*, 712 F.3d 865, 876 (4CA 2013) (assuming *Heller* applies outside the home).

While the Sixth Circuit Court of Appeals has yet been silent on the subject of exactly where Second Amendment rights apply, the court recently found these rights are "fundamental to our system of ordered liberty." *Tyler v. Hillsdale Cnty Sherrif's Dept.*, ___ F.3d ___, Docket No. 13-1876, slip opinion at 22 (6CA 2014) (quoting *McDonald v. Chicago*, 561 U.S. 742, 778 (2010)) (finding that permanent bans on institutionalized persons possessing firearms violates Second Amendment).

By choosing to strip Plaintiff of his firearm when he was not engaged in any unlawful activity, Defendant

13

Officers infringed upon Plaintiff's right to keep and bear arms for the purpose of self-defense. The right to keep and bear arms for self-defense has been recognized by the Supreme Court as a fundamental right and incorporated to the states. See *McDonald v. Chicago*, 561 U.S. 742 (2010). Defendant Officers did so in the course of their employment as law enforcement officers which places their actions under the color of state law. Defendant Officers are not immune from these claims under the theory of Qualified Immunity.

## Qualified Immunity and First Amendment Claim

When speech and non-speech elements are combined in the same course of conduct, a sufficiently important government interest can justify incidental limitations of First Amendment rights. See *U.S. v. O'Brien*, 391 U.S. 367 (1968). Speech encompasses verbal and written expression as well as symbolic speech expressed through conduct. See *Tinker v. Des Moines Indep. School Dist.*, 393 U.S. 503 (1969). In determining whether conduct is speech, and

14

therefore invokes First Amendment protections, a court must ask whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Spence v. Washington*, 418 U.S. 405, 410-11 (1974). Controversial symbolic speech, even that which has the potential to evoke a strong or violent emotional reponse, has been held protected, even in non-public fora. *Tinker*, 393 U.S. at 508-09.

In *Smith v. Tarrant Cnty. College Dist.*, the court held that to prohibit students from wearing empty holsters to class based on an "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." 694 F. Supp.2d 610, 631 (N.D. Tex. 2010). The analysis hinges upon whether a "particular message is likely to be understood by those who view it." *Nordyke v. King*, 319 F.3d 1185, 1190 (9CA 2003).

In the present case, Plaintiff was openly carrying a

15

firearm, as opposed to lawfully carrying concealed as was his legal right, in order to promote awareness of and educate others, including law enforcement, on the legality of open carry. Plaintiff had the intent to convey that particular message by openly carrying his own firearm. Open carry when done to promote awareness of and educate others on the legality of open carry deserves First Amendment protection as symbolic speech. Officers responded to the office at the request of a worker at the Secretary of State office. The response, therefore, was a direct result of Plaintiff's exercise of free speech. As a result, Plaintiff's First Amendment rights were infringed upon by the officers' forcible interaction with Plaintiff.

## State Assault, Battery, and False Imprisonment Claims

Plaintiff's claim of unreasonable use of force was incorporated by reference from his Fourth Amendment claim. Plaintiff relies on his argument above on the Fourth Amendment claim for the unreasonableness of Defendant

16

Officers' use of force.

## Failure to Train Claim

Based upon discovery materials received from Defendants, Plaintiff concedes an inability to prove that a failure to train officers that would evidence an obvious indifference to Plaintiff's rights.

## Replevin Claim

A governmental function for the purposes of tort liability requires that the act be expressly or impliedly authorized by constitution or statute. *Granger v. Klein*, 197 F.Supp.2d 851, 861 (E.D. Mich 2002). Michigan's Constitution forbids government agencies from taking private property without due process. Mich. Const. 1963 Art. X Sec. 2. Firearms are only allowed to be forfeited to governement agencies when a person is convicted of an offense under Chapter XXXVII of the Michigan Penal Code. MCL 750.239(1).

Defendants did seize Plaintiff's pistol in connection with his arrest. However, since there was no conviction,

there is no lawful basis for Defendant City of Jackson to base a claim that the pistol is permanently forfeit. Since Defendant City of Jackson's retention of Plaintiff's pistol is not authorized by law, Defendant is not entitled to statutory immunity against Plaintiff's replevin action.

# Request for Relief

Plaintiff requests:

1.  Defendants' Motion for Summary Judgment be denied.

2.  That this Court enter a judgment that Defendants are

    not entitled to Qualified or Governmental Immunity.

Respectfully Submitted,

The Law Offices of Steven W. Dulan

By: /s/ Steven W. Dulan

Steven W. Dulan (P54914)
Attorney for Plaintiff
1750 E. Grand River Ave
Suite 101
East Lansing, MI 48823
(517) 333-7132

Dated: December 21, 2014

19

# Certificate of Service

On December 22, 2014, I submitted this Response to Defendants' Motion for Summary Judgment using the Eastern District of Michigan's ECF system. This will cause a copy of this document to be served by email upon counsel to all parties at their registered email addresses.

<u>/s/ Steven W. Dulan</u>
Steven W. Dulan (P54914)
Attorney for Plaintiff

20